IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

                                                Cr. No. 20-20011-SHL

JEREMY LEWIS,

        Defendant.

DEFENDANT JEREMY LEWIS' MOTION TO SUPPRESS AND INCORPORATED MEMORANDUM OF LAW

COMES NOW the Defendant, Jeremy Lewis, pursuant to Federal Rule of Criminal Procedure 12(b)(3), and for his Motion to Suppress, would respectfully state unto this Honorable Court as follows:

**FACTS[1]:**

1. On April 11, 2019, at approximately 2:11 p.m., Ripley Police Department officers were dispatched to an address on Williams Switch Road to investigate a 911 call.

2. The address in question is a small, single family home with a semi-circular driveway with two exit points to the road. There is a covered carport area to one side of the home.

3. The 911 call was made by Bryant Evans and alleged defendant Jeremy Lewis and his brother Maurizio Taylor threatened him with an AR 15 type rifle, then left his house traveling toward the Williams Switch Road address.

---

[1] The Facts set forth in this Motion were obtained largely from the government's discovery production to date. The Facts are set forth solely for purposes of this Motion. Defendant does not herein adopt them as true for any other purpose and reserves the right to supplement this Motion pursuant to further discovery or new facts elicited at the evidentiary hearing on this Motion.

4. Upon arrival at the Williams Switch address, officers encountered Taylor and Lewis. The men had gotten out of a red car and were "going towards the residence."

5. The police report indicates officers then "observed in plain view, an AR Rifle, in the back floorboard of the red car."

6. Both men were immediately put in handcuffs and detained on the scene.

7. Officers removed the firearm from the car and "ran the serial number of the firearm through their dispatch to check if the firearm had been reported stolen."

8. The firearm "did not have any records."

9. Lewis nor Taylor had any outstanding warrants.

10. After running the firearm's serial number and checking for warrants on Lewis and Taylor, the officers then "placed the rifle on the hood of the vehicle and asked Lewis and Taylor to leave the firearm unloaded until they left the scene."

11. Officer Mullen alleges that he spoke to Mr. Lewis about the rifle not having a safety switch and that Mr. Lewis "stated he knew and had intended to get the switch back on the firearm."

12. Neither Taylor nor Lewis was charged with a crime on April 11, 2019, and officers released the men and left the scene at Williams Switch Road.

13. The 911 dispatch recording indicates at the conclusion of their encounter with Mr. Bryant Evans, officers issued him a citation for misuse of 911.

14. On May 20, 2019, the Brownsville Police Department initiated a traffic stop of a man named Pierre Whitelow. During the stop, a firearm was recovered with a serial number purported to match the firearm officers observed in their search of the red car at Williams Switch Road on April 11, 2019.

15. Special Agent Alford of the ATF took custody of the firearm on May 20, 2019.

16. An indictment was filed in this matter on or about January 14, 2020, charging Mr. Lewis with being a Convicted Felon in Possession of a Firearm on April 11, 2019.

## ARGUMENTS AND AUTHORITIES

The Fourth Amendment protects the "right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The Fourth Amendment thus prohibits "'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." United States v. Arvizu, 534 U.S. 266, 273 (2002) (quoting Terry v. Ohio, 392 U.S. 1, 9 (1968)). The Sixth Circuit has recognized "three types of permissible encounters between the police and citizens" under the Fourth Amendment: "(1) the consensual encounter, which may be initiated without any objective level of suspicion; (2) the investigative detention, which, if non-consensual, must be supported by a reasonable, articulable suspicion of criminal activity; and (3) the arrest, valid only if supported by probable cause." United States v. Smith, 594 F.3d 530, 535 (6th Cir. 2010) (internal quotations and citations omitted).

When evidence is obtained as a result of an unconstitutional search or seizure, it is inadmissible in federal court. United States v. Pearce, 531 F.3d 374, 381 (6th Cir. 2008) (citing Mapp v. Ohio, 367 U.S. 643, 654 (1961)). This is the exclusionary rule and it "is supplemented by the 'fruit of the poisonous tree' doctrine, which bars the admissibility of evidence which police derivatively obtain from an unconstitutional search or seizure." Id. (citations omitted).

As explained further below, Mr. Lewis avers that the search of the vehicle in this case amounted to a violation of his rights under the Fourth Amendment. Consequently, there are no applicable exceptions to the otherwise required search warrant requirement; therefore, Mr. Lewis respectfully requests that this Court suppress all of the evidence found as a result of the

unconstitutional search to include any statements alleged to have been made by Mr. Lewis in relation to the firearm on April 11, 2019.

Supreme Court precedent has established that an officer may conduct a warrantless search of an arrestee's vehicle when genuine safety or evidentiary concerns exist. Arizona v. Gant, 556 U.S. 332, 347 (2009). However, officers must actually arrest the person in order to justify such searches, not simply have the right to arrest. Knowles v. Iowa, 525 U.S. 113, 117-18 (1998).

In order to lawfully arrest a person or to conduct a subsequent search of the person's vehicle or packages, an officer must have "probable cause to believe that a criminal offense has been or is being committed." Devenpeck v. Alford, 543 U.S. 146, 152 (2004). "Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that an offense has been committed." Henry v. United States, 361 U.S. 98, 102 (1959); accord Beck v. Ohio, 379 U.S. 89, 91 (1964). "Whether probable cause exists depends on the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." Devenpeck, 543 U.S. at 152.

In the instant case, when officers arrived on the scene, they detained Mr. Lewis and Mr. Taylor while they investigated the 911 call. Officers claim to have seen the firearm in plain view in the vehicle after arriving on the scene. However, there is no applicable exception to the search warrant requirement that permits a search of the car to retrieve the weapon and check its serial number. Neither Mr. Lewis or Mr. Taylor was arrested or charged with a crime, foreclosing the argument this was a search incident to arrest. Mr. Lewis and Mr. Taylor were handcuffed on the scene, alleviating any concerns about officer safety. The vehicle was legally parked in the driveway leaving no reason for officers to tow the car incident to an arrest and give way to an inventory search. And finally, because the car was parked in the driveway such that a passerby

would not be able to observe its contents without moving into the area of the home, Mr. Lewis argues that the vehicle was located within the home's curtilage and subject to the additional Constitutional protections of the areas immediately surrounding the home.

The Sixth Circuit has recognized that, "the area immediately surrounding and associated with the home—is treated as part of [the] home itself for Fourth Amendment purposes." United States v. Coleman, 923 F.3d 450, 455 (6th Cir. 2019).  The Sixth Circuit has further explained that, "The protection afforded the curtilage is essentially a protection of families and personal privacy in an area intimately linked to the home, both physically and psychologically, where privacy expectations are most heightened." Id. (quoting Collins v. Virginia, 138 S. Ct. 1663, 1670 (2018)). Because of this common understanding, officers must assess whether an area to be searched is part of a home's curtilage.  Collins at 1674–75.  The Court held in Collins that "the automobile exception does not permit an officer without a warrant to enter a home or its curtilage in order to search a vehicle therein."  Id.  This protection extends even to items alleged to be in plain view because, "under the plain-view doctrine, any valid warrantless seizure of incriminating evidence requires that the officer have a lawful right of access to the object itself.  Id. at 1672 (citing Horton v. California, 496 U.S. 128, 136-137 (1990).

## CONCLUSION:

WHEREFORE, PREMISES CONSIDERED, Defendant respectfully requests this Court suppress any and all evidence related to the vehicle search on April 11, 2019, and any alleged statements of admission by Mr. Lewis.

Defendant reserves the right to amend this motion, should new information become available.

Respectfully submitted,

DORIS RANDLE-HOLT
FEDERAL DEFENDER

s/ Anna B. Hamilton
Assistant Federal Defender
200 Jefferson Ave., Suite 200
Memphis, TN 38103
(901) 544-3895

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the Motion to Suppress was forwarded via the Court's electronic filing system to Sean Hord, Assistant United States Attorney, 167 North Main, Suite 800, Memphis, Tennessee 38103.

This 12th day of March, 2020.

s/ Anna Hamilton
Assistant Federal Defender