# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Criminal No.: 2:20-cr-20011-SHL |
| ) | |
| ) | |
| JEREMY LEWIS, ) | |
| ) | |
| Defendant. ) | |

___

**UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS**
___

**COMES NOW**, the United States, by and through United States Attorney D. Michael Dunavant, and his Special Assistant United States Attorney, Sean G. Hord, and files this response to Defendant Jeremy Lewis' ("Lewis") Motion to Suppress, which was filed on March 12, 2020. RE-22, Motion to Suppress. For the reasons stated below, the Lewis' motion is without merit and should be denied.

## I.     FACTUAL BACKGROUND

The Government believes that the evidence will show that at approximately 2:11 p.m. on April 11, 2019, the Ripley Police Department received a 911 call from Bryant Evans ("Evans"). He told the 911 operator that there were two black males standing outside of his residence at 113 Larkwood Road, Ripley, Tennessee, one of which was armed with AR-15 type rifle threatening to kill him. He identified the individuals as Lewis, who is Evans' step-son, and Maurizio Taylor ("Taylor"). While on the line, Evans reported that Lewis and Taylor had left the residence in a red car and were heading in the direction of 555 Williams Switch Road, Ripley, Tennessee. Officers

were dispatched to both residences.

As the officers were approaching 555 Williams Switch Road, they saw Lewis and Taylor getting out of a red car parked in the semi-circular driveway in the front of the residence. They were heading to the front door of the residence. Officers detained both individuals. Officers looked in the car and saw an AR-15 style rifle on the back floorboard in plain-view. The officers retrieved the rifle from the car and unloaded it, then they ran the rifle's serial number through dispatch. The rifle was not stolen per dispatch. Lewis' and Taylor's information was run through dispatch, and the dispatcher reported they had no warrants and did not report any additional information.

Officers, who went to 113 Larkwood Road to interview Evans, reported to the officers at 555 Williams Switch that Evans would not cooperate with them and press charges against Lewis. He was issued a citation for misuse of 911. Since Evans did not cooperate, the officers released Lewis and Taylor and did not charge them with aggravated assault.

Officer Tim Mullens, who ran the rifle's serial number through dispatch, noticed the rifle was missing a selector switch. He mentioned this to Lewis, and Lewis responded that he knew that and that he was planning to put the switch back on the rifle. Officer Mullens put the unloaded rifle on top of the hood of the red car and told Lewis not to pick-up the rifle until they left.

The officers left and reported the call to their supervisor. The supervisor was familiar with Lewis, and he knew that Lewis was a felon. A state warrant for possession of firearm by a convicted felon was issued immediately that day. The officers attempted to serve the warrant on Lewis at 555 Williams Switch Road, but he, the rifle, and the red car were gone. On April 23, 2019, Lewis was arrested in Brownsville, Tennessee. On May 20, 2019, Pierre Whitelow from Ripley was found in possession of an AR-15 style rifle with the same serial number which was missing its selector switch during a traffic stop in Brownsville.

## II.     ARGUMENT

The Fourth Amendment guarantees "[t]he right of the people to be secure . . . against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. Searches performed without a warrant are "per se unreasonable under the Fourth Amendment, subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). The Fourth Amendment's requirement of probable cause and a warrant is, however, subject "to a few specifically established and well-delineated exceptions." *Id.* Under the automobile exception to the warrant requirement of the Fourth Amendment, an officer may perform a warrantless search of a vehicle if the officer has probable cause to believe that the vehicle contains contraband or evidence of criminal activity. *Smith v. Thornburg,* 136 F.3d 1070, 1074-75 (6th Cir. 1998); *see also Maryland v. Dyson,* 527 U.S. 465, 466-67 (1999) (citing *Carroll v. United States*, 267 U.S. 132, 153 (1925)). The "'automobile exception' has no separate exigency requirement," in that, "where there was probable cause to search a vehicle, 'a search is not unreasonable if based on facts that would justify the issuance of a warrant, even though a warrant has not been actually obtained.'" *Dyson*, 527 U.S. at 466-67 (quoting *United States v. Ross*, 456 U.S. 798, 809 (1982)). As the Sixth Circuit explained in *United States v. Smith*, 510 F.3d 641 (6th Cir. 2007), "'[e]ven in cases where the automobile was not immediately mobile, the lesser expectation of privacy resulting from its use as a readily mobile vehicle justified application of the vehicular exception.'" *Id.* at 647 (quoting *California v. Carney*, 471 U.S. 386, 391 (1985)). The court's determination whether there was probable cause at the time of the search is a "'commonsense, practical question' to be judged from the 'totality-of-the-circumstances.'" *Id.* (quoting *Thornburg*, 136 F.3d at 1074-75).

The plain-view doctrine permits the warrantless seizure of an item if: 1) the officer is

lawfully positioned in a place for which the object can be plainly viewed; 2) the incriminating character of the object is immediately apparent; and 3) the officer has a lawful right of access to the object itself. *Texas v. Brown*, 460 U.S. 730, 737 (1983); *United States v. Herndon*, 501 F.3d 683, 692 (6th Cir. 2007). "[A] motorist has 'no legitimate expectation of privacy shielding that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passerby or diligent police officers.'" *United States v. Galaviz*, 645 F.3d 347, 355 (6th Cir. 2011). The Supreme Court has stated that this doctrine "provides grounds for seizure of an item when an officer's access to an object has some prior justification under the Fourth Amendment." *Brown*, 460 U.S. at 738. "'Plain view' is perhaps better understood, therefore, not as an independent 'exception' to the warrant clause, but simply as an extension of whatever the prior justification for an officer's 'access to an object' may be." *Id.* at 738-39.

The Sixth Circuit case of *United States v. Galaviz*, 645 F.3d 347 (6th Cir. 2011), is relevant. In that case¸ Galaviz moved to suppress the warrantless seizure of a handgun from his locked car in a driveway. *Id.* at 352. Galaviz's vehicle matched the description of a vehicle that had just been used in a robbery. *Id.* at 351. A police officer followed Galaviz, who then started to evade the officer. Galaviz pulled into a driveway, exited the car, and eventually fled the scene. *Id.* at 352. Officers responding to the incident viewed, from the car window, the handle of a handgun protruding from underneath the driver's seat in violation of Michigan's concealed weapons statute. *Id.* at 352. A tow trucker driver unlocked the car, and the police seized the handgun without a warrant. *Id.* at 352.

The Sixth Circuit held that the officers discovered the gun in plain view. *Id.* at 354. The court determined (1) the officers were in a public place, thus in a position from which they could legally view the handgun; (2) they immediately recognized the object as a handgun whose

4

incriminating nature was immediately apparent because under state law it was a crime to carry a pistol in a vehicle; and (3) the automobile exception gave officers a legal right to access the firearm since the gun provided probable cause that the vehicle contained evidence of a crime. *Id.* at 355-57.

In the present matter, the facts are strikingly similar to *Galaviz*. Like *Galaviz*, the officers received a call regarding a freshly committed felony, they found a car that matched the description in the area, the defendant's car is parked in a driveway, the defendant separates himself from the car, and a firearm is found in the vehicle in plain-view.

The officers received a 911 call regarding an aggravated assaulting involving two black males. The complaint reports that they left in a red car heading toward 555 Williams Switch Road. As officers arrived to 555 Williams Switch Road, they saw a red car parked in the driveway in front of the house that matched the description with two black males exiting the vehicle. As the officers go to detain both individuals, they have to pass the car parked in front of the house. Officers looked into the car and saw the AR-15 style rifle on the rear floorboard and seized the rifle.

When the officers seized the rifle, they were in the driveway to residence which was directly in front of the residence. They were in a place they could legally be in order to view the rifle. Since they were responding to an aggravated assault complaint in which an AR-15 style rifle was used, the incriminating nature of the rifle was immediately apparent. The vehicle contained evidence (the rifle) of a crime, and the automobile exception gave the officers' a legal right to access the firearm.

### III.     CONCLUSION

For the aforementioned reasons, the United States respectfully submits that the Defendant's motion to suppress should be denied.

Respectfully submitted this the 25th day of March, 2020.

>D. MICHAEL DUNAVANT
>United States Attorney
>
>/s/ Sean G. Hord
>Sean G. Hord
>Special Assistant United States Attorney

### CERTIFICATE OF SERVICE

I, Sean G. Hord, Special Assistant United States Attorney for the Western District of Tennessee, hereby certify that a copy of the foregoing Motion has been forwarded to defense counsel via the district court's electronic filing system.

This date: March 25, 2020

>By:     s/Sean G. Hord
>           SEAN G. HORD